**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manuel MARTINEZ–GALLEGOS, Defendant-Appellant.**

No. 86–3077.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1986.

Decided Jan. 9, 1987.

**869**

JoAnne P. Rodriguez, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Raymundo G. Pena, Rupert, Idaho, for defendant-appellant.

Before BROWNING, Chief Judge, WRIGHT, Circuit Judge, ORRICK *, District Judge.

PER CURIAM:

Appellant Martinez-Gallegos appeals a conditional guilty plea on the ground that the district court erroneously denied his motion to suppress evidence showing he had re-entered the United States after deportation in violation of 8 U.S.C. § 1326 (1982). Martinez-Gallegos claims a statement obtained by Immigration and Naturalization Service (INS) agents in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), led the agents to consult INS's "A" file on Martinez-Gallegos containing the record of his previous deportations. Martinez-Gallegos argues as an alternative ground for suppression that he was in federal custody for ten days in violation of Fed.R.Crim.P. 5(a). We affirm.

Jerome County, Idaho, Deputy Sheriff George Silver stopped Martinez-Gallegos on November 28, 1985 because Martinez-Gallegos was driving a vehicle without a current registration sticker. Silver arrested Martinez-Gallegos when he could not produce proof of insurance or registration, a driver's license, or identification of any kind. Silver asked Martinez-Gallegos if he was a citizen of the United States. Mar-

tinez-Gallegos stated he was not. Martinez-Gallegos then attempted to flee by foot, but was captured and eventually brought to the county jail where he was detained on state charges. Martinez-Gallegos gave his true name during the booking procedure at the county jail.

The following day, INS agents Dan Brinson and David Offutt went to the county jail to talk to illegal aliens in custody. The agents were told by a jailer or dispatcher that Martinez-Gallegos was in custody and was an illegal alien. The agents asked Martinez-Gallegos for his name and information pertaining to his background called for by INS "Form I-213." Martinez-Gallegos was given no *Miranda* warnings. Immediately after questioning Martinez-Gallegos, the agents asked the county jail officials not to release him without informing the INS.

On the same day (November 29), agents Brinson and Offutt received from their Assistant District Director an administrative arrest warrant for Martinez-Gallegos, an order to show cause and a bail bond of $15,000. Martinez-Gallegos was not released into federal custody until December 10 and was placed under federal bond on the same day. Government counsel's uncontested explanation at oral argument was that the delay was caused by the arraignment and guilty plea of Martinez-Gallegos on state charges and his subsequent five-or six-day incarceration on those charges.

The agents received Martinez-Gallegos' "A" file on December 13, and reviewed it on December 14. The "A" file contained documents establishing that Martinez-Gallegos had previously been deported from the United States, first in 1972 when the "A" file was opened, and last on June 29, 1984. On the basis of the "A" file, Agent Offutt decided to initiate criminal charges.

* The Honorable William H. Orrick, Jr., Senior United States District Judge, Northern District of California, sitting by designation.

A complaint and arrest warrant were issued on December 17, and Martinez-Gallegos was brought before a magistrate on the same day. He was formally arraigned on December 20.

The government conceded Martinez-Gallegos' statement to the INS agents should be suppressed. Martinez-Gallegos sought suppression of the information contained in the "A" file as illegal fruit of his unwarned statements to the INS agents, and because the government violated Fed. R.Crim.P. 5(a) by not promptly bringing him before a federal magistrate for arraignment. The district court denied his motion.

■■■ The government argues the information in the "A" file should not be suppressed because it would have been discovered without the unwarned statement. The "inevitable discovery" doctrine is an exception to the exclusionary rule. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984); *United States v. Andrade,* 784 F.2d 1431, 1433 (9th Cir.1986). It applies when the prosecution can show by a preponderance of the evidence that the evidence would have been discovered inevitably by lawful means. *Nix,* 467 U.S. at 444, 104 S.Ct. at 2509; *Andrade,* 784 F.2d at 1433. The inevitable discovery doctrine applies to fifth amendment violations. *United States v. Schmidt,* 573 F.2d 1057, 1065 n. 9 (9th Cir.) ("Even if the search [leading to incriminating physical evidence was] considered the result of one of Schmidt's coerced statements, the resulting [evidence] would have been discovered by independent investigative procedures.... If evidence, otherwise inadmissible under the exclusionary rule, would have been discovered independently, it need not be excluded."), *cert. denied,* 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194 (1978); *see also Nix,* 467 U.S. at 440 n. 2, 104 S.Ct. at 2507 n. 2 (citing *Schmidt* ).

■■■ A preponderance of the evidence indicates the INS agents would have consulted Martinez-Gallegos' "A" file absent his unwarned statements. The "A" file was in INS records when the agents questioned him; it was opened in 1972 and last updated in 1984. The agents testified at the suppression hearing that if Martinez-Gallegos had refused to answer the agents' questions pertaining to his identity and background, the agents' next step, indeed the only step available to them, would have been to consult his "A" file. The file was readily retrievable since county officials had obtained Martinez-Gallegos' true name during the booking procedure.

■■■ Martinez-Gallegos' reliance on Fed. R.Crim.P. 5(a)[1] is equally fruitless. Martinez-Gallegos claims he was held in violation of Rule 5(a) for ten days: from December 10, 1985, when he was taken into federal custody, until December 20, when he was formally arraigned on the federal charge.

Martinez-Gallegos made the statements leading the INS agent to consult his "A" file on November 29, shortly after he was taken into state custody, and well before the period of federal custody of which he complains. Statements made shortly after arrest do not offend *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), or *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). *See United States v. Montes-Zarate,* 552 F.2d 1330, 1331 (9th Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). Here, as in *Montes-Zarate,* the challenged period of federal custody "had no prejudicial effect upon the defendant." *Id.*

AFFIRMED.

---

1. Fed.R.Crim.P. 5(a) provides:
   An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041....