**NOT FOR PUBLICATION**

**FILED**

AUG 31 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50240 |
| Plaintiff-Appellee, | D.C. No. 5:18-cr-00066-JGB-1 |
| v. | |
| LISA MARIE CANO, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted August 6, 2021
Pasadena, California

Before: PAEZ, CALLAHAN, and HURWITZ, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ

Lisa Cano appeals her conviction for one count of use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1. The inevitable discovery doctrine "permits the government to rely on evidence that ultimately would have been discovered absent a constitutional

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

violation." *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009). The government bears the burden of proving inevitable discovery by a preponderance of the evidence. *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000). "[T]his circuit does not require that the evidence be obtained from a previously initiated, independent investigation. The government can meet its burden by establishing that, by following routine procedures, the police would inevitably have uncovered the evidence." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989) (cleaned up). We review a district court's application of the doctrine for clear error. *Reilly*, 224 F.3d at 994.

2. The district court did not clearly err in finding that law enforcement would inevitably have identified the victim and learned of fraudulent purchases made with her credit cards even in the absence of the unlawful motel room search. "[A]s long as reasonable minds can reach differing conclusions after interpretation of the facts before the district court, the district court's findings [in applying the inevitable discovery doctrine] should remain undisturbed." *United States v. Harris*, 731 F. App'x 718, 719 (9th Cir. 2018). Law enforcement had legally seized a list of addresses from a Tacoma stolen by Cano. One of those addresses matched the address on the victim's driver's license. Other items found alongside the receipt in the Tacoma—including an embossing machine, forged credit cards, and a blank driver's license—gave law enforcement probable cause to suspect fraud. The

responsible deputy actively investigated leads based on items found in the Tacoma. For example, after finding a receipt from a storage facility in that vehicle, the deputy immediately visited the facility to speak with an employee and reviewed the facility's records. The deputy responded immediately when the employee reported that Cano had returned to the facility the following day. This evidence of the officer's active pursuit of legally-obtained leads distinguishes this case from *Ramirez-Sandoval*, where there were no facts in the record from which the district court could reasonably infer the likely course of the future investigation absent the illegal search. *See* 872 F.2d at 1399–40.

3. The district court did not err by not dismissing the indictment based on Fourth Amendment violations and alleged misconduct by law enforcement. Dismissal is a "drastic" and "disfavored" remedy. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). Although serious, the police conduct at issue was not "so grossly shocking and so outrageous as to violate the universal sense of justice" to require dismissal on due process grounds. *United States v. O'Connor*, 737 F.2d 814, 817 (9th Cir. 1984) (cleaned up). Dismissal under the court's supervisory powers was not merited because any Fourth Amendment violations were adequately remedied by the government's dismissal of several counts of the indictment and the exclusion of evidence from the unlawful motel room search. *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991).

4.  Nor was dismissal warranted based on the government's failure to disclose at a suppression hearing the investigating deputy's admission that he had searched the motel room.  Details regarding the search were disclosed prior to trial and evidence from the motel search was suppressed.  *See United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1391–92 (9th Cir. 1983); *United States v. Owen*, 580 F.2d 365, 367–68 (9th Cir. 1978).

**AFFIRMED.**

FILED

AUG 31 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Paez, J., concurring in part and dissenting in part:

The majority implicitly assumes that because a police officer actively pursued some investigative leads, he would have necessarily, or inevitably, pursued all other leads. In my view, neither the record evidence nor our case law supports such a conclusion. Because I would reverse the district court's denial of Cano's final suppression motion, I respectfully dissent from that part of the majority's disposition.[1]

Our court's inevitable discovery case law recognizes two related lines of precedent that should guide our review of the district court's inevitable discovery ruling, both of which the majority disregards. First, when we have concluded that the exception properly applies, we invariably have relied on specific testimony from police officers concerning their potential actions absent the unlawful search. *See, e.g.*, *United States v. Ruckes*, 586 F.3d 713, 719 (9th Cir. 2009) (relying on a state trooper's "testimony at the suppression hearing" that "informed Judge Burgess" of standard police procedures); *United States v. Lang*, 149 F.3d 1044, 1048 (9th Cir. 1998) (relying on an agent's credible testimony "that he had been trained to conduct searches of vehicles" and "had discovered narcotics hidden in

---

[1] I concur in the majority's affirmance of the district court's denial of Cano's motion to dismiss the indictment.

[an] engine compartment" during numerous prior searches); *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994) (relying on "supplemental declarations submitted to the district court" stating that the vehicle owner's identity was "easily obtainable" through the DMV and "the officers would have sought this information"); *United States v. Martinez-Gallegos*, 807 F.2d 868, 870 (9th Cir. 1987) (per curiam) (relying on agents' testimony "at the suppression hearing" that their "next step, indeed the only step available to them, would have been to consult [the defendant's] 'A' file").

Relatedly, when we have refused to apply the exception, we have highlighted the government's failure to demonstrate that discovery of the tainted evidence was truly inevitable. *See, e.g.*, *United States v. Young*, 573 F.3d 711, 723 (9th Cir. 2009) ("[N]othing more than speculation . . . support the discovery of the challenged evidence outside the improper search by Officer Koniaris."); *United States v. Lopez-Soto*, 205 F.3d 1101, 1107 (9th Cir. 2000) ("[T]he government provided no evidence of what Officer Hill would have done if he had not stopped Lopez-Soto when he did . . . .").

This case falls into the latter category, as there is no record evidence concerning the officer's potential actions absent the unlawful search of Cano's motel room. The primary investigating officer lawfully searched a Toyota Tacoma, which uncovered receipts, an embossing machine, forged credit cards,

and other evidence of fraud. The search also uncovered documents and scraps of paper containing a total of twenty-five addresses. Some addresses were connected to particular names. Although the victim-witness's name did not appear on the documents, three addresses were connected to her identity.

The government argues that, absent the illegal search of Cano's motel room, the officer would have identified the victim-witness by investigating every name and address on the documents. I am not persuaded. Although the documents suggest there were numerous victims of Cano's fraudulent activities, the officer completed his investigation *without ever consulting the lists*. In other words, although the officer discovered one victim's identity through other means, nothing prevented him from following up on the numerous addresses and names listed on the documents. He took no such action. Not only is there no evidence supporting the government's argument that the officer would inevitably have investigated all the addresses—the record suggests the opposite is true.

Further, during an earlier suppression hearing, the district court concluded that the investigating officer's testimony was not credible. Without any evidence concerning the officer's intended actions, it is unreasonable to assume that the officer's inevitable next step would have been to investigate the addresses, or that the addresses would inevitably have led to the victim-witness.

To be sure, the evidence in the Tacoma suggested someone was committing fraud. And the officer in question investigated one of the receipts found in the Tacoma. But the investigation of the one receipt does not establish that the officer planned to follow-up on the documents containing addresses, nor that the officer intended to investigate all twenty-five addresses, only three of which were connected to the victim-witness. Because "the government provided no evidence of what [the investigating officer] would have done" absent his illegal search, the district court erred in denying Cano's motion. *See Lopez-Soto*, 205 F.3d at 1107.

Second, we have held that the government can meet its burden by establishing that an officer would inevitably have discovered the evidence "by following routine procedures." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989). Critically, our cases explain that this language has a specific meaning: When a particular procedure is the next "inevitable step," or "the *only* available procedural step," in an investigation, we can reasonably conclude that such action would inevitably have occurred. *Id.* at 1400; *see also United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000) (describing "the next and only step available"). In the context of this case, the majority applies "routine procedures" to encompass all general police investigations. That interpretation is untenable.

When we first used the phrase "routine procedures" in *Ramirez-Sandoval*, we looked to *Martinez-Gallegos* and *Andrade* for guidance. 872 F.2d at 1399. We

explained that "routine procedures" referred to (1) testimony from federal agents stating that "the only step available to them" would have been to consult the defendant's "A" file to gather further information, *Martinez-Gallegos*, 807 F.2d at 870, and (2) evidence that a routine booking search would have followed a defendant's arrest and "inevitably resulted in discovery of the [contraband]," *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). *See also Reilly*, 224 F.3d at 994-95 (conducting the same analysis). Thus, the term "routine procedures," on which the majority relies to affirm, refers specifically to well-established police actions that are so consistently applied as to be considered "routine."

The majority's assumption that the officer in this case would have closely investigated all potential leads finds no support in our case law. Neither the government nor the majority identify a "routine" procedure that the officer would inevitably have pursued. There were numerous steps available to the investigating officer after his search of the Tacoma, only some of which involved the list of addresses that he found. There is no record evidence establishing that the officer thought the addresses were significant, planned to run a search of the addresses, or believed that running a search of the addresses would have led to identifying potential victims. *See Ramirez-Sandoval*, 872 F.2d at 1400.

The majority's application of the inevitable discovery exception—that it applies when a court can "reasonably infer the likely course of the future investigation"—mistakes the exception for the rule. *See id.* (holding that the exception does not apply when "it is equally plausible" that such investigative steps would not have occurred). The inevitable discovery exception applies in circumstances "where, based on the historical facts, inevitability is demonstrated in such a compelling way that operation of the exclusionary rule is a mechanical and entirely unrealistic bar." *United States v. Boatwright*, 822 F.2d 862, 864 (9th Cir. 1987) (Kennedy, J.). This case does not meet that standard. I would reverse the district court's ruling, vacate Cano's conviction, and remand.[2]

---

[2] The government's alternative arguments—that the independent source doctrine and attenuation doctrine are applicable—are similarly meritless.